UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH B. GIBBS,<br><br>　　　　　Plaintiff<br><br>　　　v.<br><br>J.R. BRADFORD, et al.,<br><br>　　　　　Defendants. | No.  2: 14-cv-0831 TLN AC P<br><br><br>ORDER |

　　　　Plaintiff is a state prisoner proceeding pro se.  He seeks relief pursuant to 42 U.S.C. § 1983 and has requested authority pursuant to 28 U.S.C. § 1915 to proceed in forma pauperis.  This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

　　　　Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a).  Accordingly, the request to proceed in forma pauperis will be granted.

　　　　Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28 U.S.C. §§ 1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account.  These payments will be forwarded by the appropriate agency to the Clerk of the Court each time

the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

Screening Requirement

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in

the plaintiff's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

      Plaintiff's Allegations

      Plaintiff names as defendants at California State Prison Sacramento (CSPS): Librarians J.R. Bradford and S. Casto; Correctional Sergeant Cross; Correctional Officers (COs) Advincula and Aubert; and Clinician H. Waddle.  Plaintiff alleges that on December 6, 2013, defendants Bradford and Casto were aware that a library clerk named Jeffrey (non-party) was assisting plaintiff with his court deadlines but acted "in concert with custody" in hindering his law library access.  Defendant Bradford cancelled plaintiff's PLU (priority legal user) status and sent him GLU (general legal user) ducats which allowed custody to cancel the ducats and deny plaintiff law library access.  Defendant Casto closed the library for a week, denying plaintiff access to the library and to his legal assistant and denied his legal assistant computer access to work on plaintiff's opposition to defendants' motion to dismiss (in an unidentified case).  This was done in retaliation for plaintiff's having filed lawsuits against officials at Pelican Bay.  Complaint, ECF No. 8 at 7-8.

      On January 10, 2013,[1] custody cancelled plaintiff's GLU ducat.  On January 13, 2013, plaintiff had an 8:00 a.m. ducat for the library but when he went to the library, it was closed.  When on January 18, 2013, plaintiff told defendant Advincula that he had a GLU library ducat, CO Advincula told him it had been cancelled.  Defendant Advincula refused to let him go even after plaintiff told Advincula he needed to go to the library because he had court deadlines.  Plaintiff then asked to be able to speak to defendant Cross and to defendant Clinician Waddle but was refused by Advincula.  Five minutes later, defendant Advincula told him he was escorting plaintiff to the library.  Id. at 8-9.

      When plaintiff arrived at the library, plaintiff asked defendant Casto why she had closed the library.  Defendant Casto then said that plaintiff had had an 8:00 a.m. ducat on December 13th but an earlier incident on the yard caused program modification, including library closure for the rest of the day.  (Plaintiff earlier referred to the library as having been closed on January 13, 2013

---

[1] It is most likely that plaintiff intended to indicate January 2014 not 2013 in these allegations.

3

1   but here refers to its having been closed on December 13th).  Plaintiff claims there was no yard

2   incident and appears to be saying that the library had never opened that day.  Id. at 9 and CDCR

3   22 request for interview form at 28.

4         On December 27, 2013, plaintiff asked defendant Advincula if he could speak with

5   defendant Cross and when Advincula asked why, plaintiff told him he was being denied access to

6   the library by second watch officers and harassed by officers on third watch.  Defendant

7   Advincula told plaintiff "okay," also letting plaintiff know that he was getting a cellmate.

8   Although plaintiff told him he "was single cell," defendant said his office board showed

9   otherwise.  Plaintiff agreed to a cellmate.  Id. at 10.

10         Thirty minutes after having returned to his cell, plaintiff was told "he had library."  Upon

11   his return, defendant Waddle told plaintiff that a referral from defendant Advincula indicated

12   plaintiff was agitated and had refused a cellmate; plaintiff explained that he had not refused a

13   cellmate and was not agitated but had only asked to speak to defendant Cross about the denial of

14   library access and staff harassment.  Plaintiff then showed defendant Waddle his single cell

15   chrono and told her he could not have a cellmate.  Id. at 10-11.

16         Defendant Waddle asked plaintiff if he were suicidal or homicidal, which plaintiff denied.

17   He told her he was eating and sleeping and, in response to her questions, told her he arose at 3:00

18   a.m. for prayer and read his Bible until 6:00 a.m., exercised for an hour and then did his legal

19   work.  Plaintiff then states that defendant Waddle listened for ten minutes as plaintiff "started

20   preaching to her about Jesus Christ."  After she left, plaintiff was told defendant Cross wanted to

21   speak with him.  Id. at 11-12.

22         Defendant Cross agreed with plaintiff that plaintiff had a single cell assignment.

23   Defendant Cross told plaintiff that defendant Waddle had some concerns and wanted to speak

24   with him again.  Plaintiff was escorted to the clinic and placed in the holding cell by defendants

25   Advincula and Cross.  Defendant Advincula told plaintiff he wanted defendant Waddle to send

26   plaintiff to CTCI[2] to be evaluated.  Id. at 13-14.  Plaintiff told Advincula he had not told

27   ───────────────

28   [2] Plaintiff's reference to the initials "CTCI" is unclear.  Possibly he means the California Substance Abuse Treatment Facility and State Prison at Corcoran.

1  defendant Waddle he was suicidal or wanted to hurt anyone and could not be transferred and
2  placed on suicide watch because Advincula wanted an evaluation.  When plaintiff asked
3  defendant Cross why defendant Waddle was sending him to CTCI when he had not told her he
4  was suicidal, Cross told him Waddle had not said plaintiff was suicidal but simply that she "had
5  some concerns." Id. at 12-13.

6  When plaintiff asked defendant Waddle why she was sending him to CTCI, she only
7  stated that she had some concerns.  Plaintiff accused her of working with custody staff to get him
8  off the yard and she walked away.  Plaintiff was transferred to CTCI and placed on suicide watch.
9  Id. at 13-14.

10  On December 28, 2013, a Dr. William (not a party) asked plaintiff if had suicidal thoughts
11  or any desire to hurt anyone which plaintiff denied.  When plaintiff told him he had court
12  deadlines to meet, Dr. William told plaintiff he would have to have to go to the IDTT
13  (interdisciplinary treatment team) for his release.  Later in the morning in a session with Dr.
14  William, plaintiff told him that defendant Waddle had "in concert with custody" had him
15  transferred to CTCI to get him placed in the EOP (enhanced outpatient program) to stop him
16  receiving legal assistance from Library Clerk Jeffrey.  Plaintiff told the doctor this was in
17  retaliation for his Pelican Bay lawsuits.  Plaintiff stated Waddle had falsified her report to have
18  him sent to CTCI.  Dr. William told plaintiff he had read the report and that it "did not make any
19  sense," that he found plaintiff to be stable and should not have been sent to CTCI.  Plaintiff
20  alleges the doctor told him he was going to recommend plaintiff be released to meet his court
21  deadlines but that it was up to IDTT.  Id. at 14-16 and at 30, a copy of a portion of defendant
22  Waddle's 12/27/13 request for a mental health evaluation.

23  On December 30, 2013, plaintiff appeared before the IDTT where he was told they would
24  retain him for a week for a psychiatric evaluation.  Plaintiff explained his need to meet court
25  deadlines, that Dr. William had found him stable and that he had not had psychiatric symptoms
26  warranting his CTCI placement.  Plaintiff told them he had been transferred to help defendants in
27  his Pelican Bay lawsuits.  Plaintiff said if IDTT kept him, they would also be retaliating against
28  him and that he would write Judge Henderson and ask for leave to sue them too.  He was then

5

told he would be released to Facility C.  Id. at 16-17.

Plaintiff alleges that his constitutional rights were violated by defendants Cross, Advincula and Waddle when they had him "transferred to CTCI and placed on suicide watch to send him to EOP," all "to deny plaintiff access to his legal assistant." This was done to interfere with plaintiff's court deadlines and in retaliation for plaintiff's having brought lawsuits against Pelican Bay officials.  Id. at 9-10.

Plaintiff returns to his allegations regarding denial of law library access.  He alleges that on January 17, 2014 his January 11, 2014 PLU request was granted by defendant Bradford, but she thereafter refused to send him a PLU ducat.  On February 3, 2014, plaintiff sent defendant Bradford a form 22 asking why she had not sent his library ducat.  Plaintiff's own exhibit demonstrates that in her response Bradford acknowledged her approval of his PLU status but claimed that he was "uncooperative and totally disrespectful" after having been asked to move his "papers from all over the reception desk and to go to a table allowing the clerks to assist other patrons," stating plaintiff had been "unnecessarily loud and vulgar."  Id. at 18-19 and exhibits at 32, 38.

On February 4, 2014, plaintiff filed a grievance, complaining that defendant Bradford had failed to send him a library ducat and had acted "in concert with custody" by cancelling his PLU status, denying him library access and access to his legal assistant.  On February 5, 2014, defendant Bradford called plaintiff to the library.  By way of explanation as to why he had not received a ducat in two weeks, she told plaintiff the program office had not processed her ducat list.  Plaintiff submitted another PLU status request as well as documents to be copied.  Defendant told him when it was time to go that she did not approve the PLU status.  Id. at 19-20.

On February 6, 2014, defendant [Bradford] called plaintiff back to the library.  Plaintiff had not signed all his papers.  When he did, she approved copying his civil rights complaints and motions.  As plaintiff was handed the copies, he used the counter to organize his papers.  Defendant told him he could use the small table to staple his documents but plaintiff told her the table was not big enough and accused her of being angry with him for filing a grievance against her again about not educating him to the library.  Defendant [Bradford] called defendant Aubert

6

1    and had plaintiff "kicked . . .out" of the library.  When plaintiff explained that his documents
2    were still being copied, defendant Aubert told plaintiff he would get the rest of the documents to
3    him.  Id. at 20-22.

4          The following day, February 7, 2014, when plaintiff went to the library to get the
5    remainder of his documents copied, defendant Aubert stopped him, telling him defendant
6    Bradford did not want him in there.  Plaintiff told Aubert he needed to speak with Jeffrey about
7    his opposition to the motion to dismiss which was approaching the deadline.  Defendant Aubert
8    told plaintiff to speak with defendant Cross.  Plaintiff explained to Cross that he had a pending
9    court deadline, needed to speak to Jeffrey about his opposition and needed copies but that
10   Bradford refused to let him into the library.  Defendant Cross informed plaintiff that he had been
11   barred from the library and could not re-enter it but would have to access the library through the
12   mail.  Plaintiff said he could not be barred when he had a court deadline and PLU status.
13   Defendant Cross told him he could not go back in the library based on his behavior there, but
14   offered no further explanation.  Id. at 22-23.

15         Defendant Cross told plaintiff to give the rest of his documents for copying to Aubert,
16   who gave them to Bradford for copying.  When defendant Aubert gave plaintiff the copies,
17   Aubert told plaintiff that Bradford told him to give plaintiff a copy of the PLU request she had
18   just approved which plaintiff had given her on February 5, 2014.  Id. at 23-24.

19         On February 14, 2014, Bradford's supervisor, defendant Hamad (non-party), assigned by
20   the appeals coordinator, interviewed plaintiff regarding his grievance against defendants Bradford
21   and Casto.  Plaintiff explained that Bradford had granted plaintiff PLU status on Feb. 7, 2014 but
22   refused to ducat him to the library.  He complained that Cross, Aubert and Bradford had barred
23   him from the library, he had no access to his legal assistant and he had a court deadline in a few
24   days.  The same day, Feb. 14, 2014, defendant sent plaintiff a ducat for February 15, 2014 but
25   when he told C/O Casillas (not a defendant), that officer told plaintiff he could not release him
26   because defendant Bradford had called and told him not to.  Id. at 24-25.

27         Plaintiff seeks declaratory relief and money damages.  Id. at 26.
28   ////

7

Denial of the Right of Access to the Courts

Prisoners have a constitutional right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977), limited in part on other grounds by Lewis, 518 U.S. at 354; Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009); Ching v. Lewis, 895 F.2d 608, 609 (9th Cir. 1990) (per curiam). This right requires that prison authorities "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. at 828; see also Phillips v. Hust, 588 F.3d 652, 655. The Ninth Circuit has held "that prisoners have a right under the First and Fourteenth Amendments to litigate claims challenging their sentences or the conditions of their confinement to conclusion without *active interference* by prison officials." Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011) (emphasis in original).

The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions. See Lewis, 518 U.S. at 353 n.3, 354-55. In order to frame a claim of a denial of the right to access the courts, a prisoner must establish that he has suffered "actual injury," a jurisdictional requirement derived from the standing doctrine. Lewis, 518 U.S. at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis, 518 U.S. at 348 (citation and internal quotations omitted); see also Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (noting that "[f]ailure to show that a 'non-frivolous legal claim had been frustrated' is fatal" to a claim for denial of access to legal materials) (citing Lewis, 518 U.S. at 353 & n.4).

A prisoner asserting a backward-looking denial of access claim - - - one seeking a remedy for a lost opportunity to present a legal claim - - - must show the loss of a "nonfrivolous" or "arguable" underlying claim, "the official acts frustrating the litigation," and "a remedy that may be awarded as recompense but [that is] not otherwise available in some suit that may yet be brought." Christopher v. Harbury, 536 U.S. 403, 415, 417 (2002) (noting that a backward-looking denial of access complaint "should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued. . . ."); see also

1  Avalos v. Baca, 596 F.3d 583, 591 n.8 (9th Cir. 2010).

2        Plaintiff has failed to establish or allege an actual injury.  Plaintiff's own allegations demonstrate that plaintiff was not foreclosed from every avenue of law library access.  At least one of his exhibits indicate that his access to the library was restricted as a result of his having failed to respond appropriately when plaintiff commandeered an area of the library from which defendant Bradford had asked him to move his materials.  Moreover, although plaintiff's allegations do not identify the specific case for which he contends that defendants hindered his ability to file an opposition, his exhibits to the complaint and other docket entries show that he is referencing a case of his before Judge Thelton Henderson in the Northern District, Gibbs v. Farley, et al., No. 3:13-cv-2114 THE (N.D. Cal. 2013).  See ECF No. 1 (letter), ECF No. 8 (complaint) at 39.  He alleges that his efforts to file an opposition to a motion to dismiss for were thwarted.  However, plaintiff does not allege an actual injury as a result.  This court takes judicial notice[3] of Gibbs v. Farley, et al., 3:13-cv-2114 THE (N.D. Cal. 2013).  That case is proceeding.  In fact, the case docket indicates that the motion to dismiss was denied and plaintiff was subsequently granted leave to file a first amended complaint.  Moreover, on August 5, 2014, he was granted leave to file a second amended complaint.  Because plaintiff has not demonstrated that the alleged denial of access to the courts caused him to suffer the dismissal of meritorious claims, he has failed to state a claim.

      Plaintiff's claim of denial of the right of access to the courts will therefore be dismissed.  Plaintiff will be granted leave to amend.

### Retaliation

A viable claim of retaliation must set forth:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and

---

[3] Judicial notice may be taken of court records.  Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126 (1981)).  A court may take judicial notice of court records.  See Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994); MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

> that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); see also, Silva Di Vittorio, 658 F.3d at 1104. Plaintiff claims that defendants transferred him for a psychiatric evaluation and obstructed his law library access in retaliation for filing suit against prison officials at Pelican Bay State Prison. This claim appears to be based entirely on plaintiff's own speculation about defendants' motives. No facts are pleaded which establish a factual predicate for retaliation. Plaintiff's fluctuating library status and his temporary transfer to another facility for a psychiatric evaluation when he had court deadlines are insufficient without more to raise the specter of retaliation, particularly absent a showing that these circumstances had any chilling effect of plaintiff's exercise of his First Amendment rights.

Plaintiff's retaliation claim will therefore be dismissed, but plaintiff will be granted leave to amend.

Conspiracy

Plaintiff also claims that the individual defendants were engaged with unnamed "custody" staff, all acting "in concert" to impede plaintiff's case against Pelican Bay officials. To state a claim for conspiracy under section 1983, a plaintiff must plead specific facts that suggest a mutual understanding among conspirators to deprive plaintiff of his constitutional rights. Duvall v. Sharp, 905 F.2d 1188, 1189 (8th Cir.1990) (per curiam). Vague and conclusory allegations are not sufficient to support a claim for civil rights violations based on conspiracy. Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992); Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir.1989) (citing Fonda v. Gray, 707 F.2d 435 (9th Cir. 1983)). Conspiracy allegations must be supported by material facts and not be merely conclusory statements. Lockary v. Kayfetz, 587 F. Supp. 631, 639 (N.D. Cal. 1984).

Here, far from establishing a conspiracy, plaintiff has failed even to name all the would-be conspirators. No facts are alleged that support a mutual understanding among all conspirators. Moreover, to the extent that he claims that his transfer was illegal, plaintiff does not show an

1  actual deprivation of his constitutional rights resulting from the alleged conspiracy. Woodrum,
2  supra (conspiracy allegation, even if established, does not give rise to liability under § 1983
3  absent an actual deprivation of civil rights). To avoid dismissal for failure to state a claim a
4  complaint must contain more than "naked assertion[s]," "labels and conclusions" or "a formulaic
5  recitation of the elements of a cause of action." Twombly, 550 U.S. at 555-557. In other words,
6  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory
7  statements do not suffice." Ashcroft v. Iqbal, 556 U.S. at 678. Plaintiff's conspiracy claim falls
8  far short of this standard.
9       This claim and the complaint as a whole will be dismissed, but plaintiff will be granted
10 leave to amend.
11      <u>Amendmennt</u>
12      If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions
13 complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v.
14 Cassidy, 625 F.2d 227 (9th Cir. 1980). Also, the complaint must allege in specific terms how
15 each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there
16 is some affirmative link or connection between a defendant's actions and the claimed deprivation.
17 Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980);
18 Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, vague and conclusory
19 allegations of official participation in civil rights violations are not sufficient. See Ivey v. Board
20 of Regents, 673 F.2d 266, 268 (9th Cir. 1982).
21      In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to
22 make plaintiff's amended complaint complete. Local Rule 220 requires that an amended
23 complaint be complete in itself without reference to any prior pleading. This is because, as a
24 general rule, an amended complaint supersedes the original complaint. See Lacey v. Maricopa
25 County, 693 F.3d 896, 927 (9th Cir. 2012) ("the general rule is that an amended complaint
26 super[s]edes the original complaint and renders it without legal effect... .") Once plaintiff files an
27 amended complaint, the original pleading no longer serves any function in the case. Therefore, in
28 an amended complaint, as in an original complaint, each claim and the involvement of each

defendant must be sufficiently alleged.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. The complaint is dismissed for the reasons discussed above, with leave to file an amended complaint within twenty-eight days from the date of service of this order. Failure to file an amended complaint will result in a recommendation that the action be dismissed.

DATED: September 18, 2014

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE